## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**CAROLYN J. G.,**[1]

       **Plaintiff,**

                            **Case No. 2:21-cv-9954**

    **v.**                        **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

       **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Carolyn J.G. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I.    PROCEDURAL HISTORY

On January 12, 2016, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since January 22, 2014. R. 128, 141, 330–31. The application was denied

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

initially and upon reconsideration. R. 177–81, 183–88. Plaintiff sought a *de novo* hearing before

an administrative law judge. R. 189–91. Administrative Law Judge Beth Shillin ("ALJ Shillin")

held a hearing on February 5, 2018, at which Plaintiff, who was represented by counsel, testified,

as did a vocational expert. R. 31–81. In a decision dated June 12, 2018, ALJ Shillin concluded

that Plaintiff was not disabled within the meaning of the Social Security Act from January 22,

2014, Plaintiff's alleged disability onset date, through the date of that decision ("the 2018

decision"). R. 158–65. Upon Plaintiff's request, R. 246–47, the Appeals Council granted review

of that decision, R. 171–74, and remanded the matter to an ALJ to resolve the following issue:

> The claimant's past work of Preschool Teacher (DOT Code 092.227-018) and
> Teacher's Assistant (DOT Code 099.327-010) were not performed at the
> substantial gainful activity limits (Ex. 3D). The only job over the past fifteen (15)
> years the claimant performed over the substantial gainful activity limit was at
> Pomptonian as Head Cook; however, the vocational expert testified that the
> claimant would not be able to perform this work. Exhibit 3D, pp. 1-2 shows that
> for the State of New Jersey, the claimant earned $2,641.72 in 2004 and $352.96 in
> 2005 and for the Ralway Board of Education she earned $1,173.72 in 2005. The
> positions of Preschool Teacher (DOT Code 092.227-018) and Teacher's Assistant
> (DOT Code 099.327-010) performed in 2004 and 2005 are SVP 7 and 6 jobs,
> respectively. In accordance with POMS DI 25001.001, the claimant would have
> had to have worked at this position for one-to-two (1-to-2) years for (SVP 6) and
> two-to-four (2-to-4) years (for SVP 7) in order to have learned this job. As she did
> not work in these positions for one (1) or two (2) years or earn substantial gainful
> activity in any other year from these positions, the claimant did not perform these
> jobs long enough for them to be considered past relevant work. Since these jobs
> could not be past relevant work, Finding 6 of the hearing decision is not supported.
> As such, further consideration and evaluation by the Administrative Law Judge is
> warranted.

R. 172. The Appeals Council further directed that the Administrative Law Judge to:

- Give further consideration to whether the claimant has past relevant work and, if so, can perform it (20 CFR 404.1560(a)-(b)). If warranted, obtain vocational expert evidence to assist in evaluating whether the claimant can perform past relevant work.

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other

2

occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

R. 172–73.[3]

Following remand, ALJ Nicholas Cerulli ("ALJ Cerulli") held a second hearing on February 7, 2020, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 82–120. In a decision dated April 15, 2020, ALJ Cerulli concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 12, 2018, Plaintiff's alleged disability onset date, through June 30, 2019, the date on which Plaintiff was last insured for DIB ("the 2020 decision"). R. 10–19. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on February 17, 2021. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On January 18, 2022, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil

---

[3] In light of Plaintiff's counsel's challenge under the Appointments Clause of the United States Constitution, Art. II, § 2, cl. 2, the Appeals Council remanded the case to a different ALJ. R. 173 (noting further that "[a]ny Appointments Clause defect is cured by this remand because, on July 16, 2018, the Acting Commissioner of Social Security ratified all Administrative Law Judge appointments and approved them as her own under the Constitution").

Procedure. ECF No. 16.[4] On February 3, 2022, the case was reassigned to the undersigned. ECF

No. 17. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.     Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative
> record and asks whether it contains sufficien[t] evidence to support the agency's
> factual determinations. And whatever the meaning of substantial in other contexts,
> the threshold for such evidentiary sufficiency is not high. Substantial evidence, this
> Court has said, is more than a mere scintilla. It means – and means only – such
> relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks

omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal

quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009)

(citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018

WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot

be set aside merely because the Court "acting de novo might have reached a different

---

[4]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases
seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot
Project (D.N.J. Apr. 2, 2018).

conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016).  The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

5

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210,

221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

B.     **Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    THE 2020 DECISION AND APPELLATE ISSUES

Plaintiff was 56 years old on her alleged disability onset date. R. 121, 129. At step one, ALJ Cerulli found that Plaintiff had not engaged in substantial gainful activity between January 22, 2014, her alleged disability onset date, and June 30, 2019, the date on which Plaintiff was last insured. R. 13.

At step two, ALJ Cerulli found that Plaintiff's seizure disorder, obesity, and status-post cerebrovascular accident were severe impairments. *Id*. The ALJ also found that Plaintiff's diagnosed hypertension was not severe. *Id*.

At step three, ALJ Cerulli found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–14.

At step four, ALJ Cerulli found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 14–18. ALJ Cerulli also found that this RFC permitted the performance of Plaintiff's past relevant work as a fast food worker. R. 18. ALJ Cerulli therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from January 22, 2014, her alleged disability onset date, through June 30, 2019, the date on which Plaintiff was last insured. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 12. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15.

IV.   **SUMMARY OF RELEVANT MEDICAL EVIDENCE**

On January 4, 2018, Kevin Lukenda, D.O., Plaintiff's family physician, completed a five-page, check-the-box, and fill-in-the-blank form entitled, "Treating Source Statement – Psychological Conditions." R. 862–66, Exhibit 11F ("2018 opinion"). Dr. Lukenda, who is Board-certified in the area of family practice, indicated that he had treated Plaintiff, beginning September 20, 2011, R. 862, for, *inter alia*, hypertension ("HTN"), cerebrovascular accident

("CVA"), a ruptured cerebral aneurysm, and seizures *Id*. His diagnoses included depression and anxiety, and he opined that Plaintiff's prognosis was good. *Id*. Asked to identify the particular medical or clinical findings that support his diagnoses and his assessment of limitations, including "dates and why the findings support the assessment[,]" Dr. Lukenda responded as follows: "HTN & ruptured cerebral aneurysm limits person from exertion[.]" *Id*. Dr. Lukenda indicated that Plaintiff's symptoms and limitations first appeared in October 2017, and were expected to last for at least twelve months. *Id*. According to Dr. Lukenda, Plaintiff had disturbance of mood accompanied by full or partial depressive syndrome and anxiety limited to the presence of a particular object or situation (specific phobia); or to resisting the obsessions or compulsions in obsessive compulsive disorder, but that she did not suffer from bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. *Id*. Dr. Lukenda checked boxes reflecting decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking under the heading "Depression"; he did not check any box under "Manic Syndrome," "General Anxiety Disorder," "Schizophrenia," "Loss of Cognitive Abilities," and "Other Mental Limitations[.]" R. 863. Asked to identify particular clinical findings, including the results of mental status examinations, that demonstrate the severity of Plaintiff's mental impairments and symptoms, Dr. Lukenda responded, "lack of interest[.]" *Id*. Dr. Lukenda assessed Plaintiff's mental abilities using the following scale: "No Limitation," meaning that "the effects of the mental disorder do not prevent the individual from functioning independently, appropriately, effectively, and on a sustained basis, in a given area"; "Mildly Limited," meaning that "the individual's ability to function independently, appropriately, effectively, and on a sustained basis is slightly limited"; "Moderately Limited," meaning that "the individual's ability to function independently,

10

appropriately, effectively, and on a sustained basis is fair. (Note: the degree and extent of the capacity or limitation must be described in narrative format below.)"; "Markedly Limited," meaning that "the individual's ability to function independently, appropriately, effectively, and on a sustained basis is seriously limited, (Note: the degree and extent of the capacity or limitation must be described in narrative format below.)"; and "Extremely Limited," meaning that "the individual is unable to function in this area independently, appropriately, effectively, and on a sustained basis. (Note: the degree and extent of the capacity or limitation must be described ln narrative format below.)[.]" R. 864. Dr. Lukenda opined that Plaintiff was moderately limited in her ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. *Id.* Asked to provide examples of these limitations, however, Dr. Lukenda made no response. *Id.* The doctor also opined that Plaintiff was moderately limited in her ability to adapt or manage herself and, when asked to give an example of this limitation, Dr. Lukenda responded, "apathetic[.]" R. 864–65. Dr. Lukenda did not report (*i.e.*, he left blank) any limitation in Plaintiff's understanding and memory. R. 865. According to Dr. Lukenda, Plaintiff was moderately limited in her ability to remember locations and work-like procedures; in the area of understanding and carrying out very short and simple instructions; and in the area of understanding and carrying out detailed but uninvolved written or oral instructions. *Id.* Dr. Lukenda opined that Plaintiff could maintain attention and concentration for less than one hour before needing redirection or requiring a break. *Id.* Plaintiff was capable of maintaining regular attendance and being punctual within customary tolerances and did not require enhanced supervision. *Id.* Dr. Lukenda further opined that Plaintiff could "[s]ometimes, but not consistently[,]" work with supervisors, co-workers, and the general public, but that she required praise and positive reinforcement from supervisors in order to handle stress and her emotions. R.

11

865–66. Dr. Lukenda also opined that Plaintiff had the ability to maintain socially appropriate behavior and to respond appropriately to changes in work settings. R. 866. Plaintiff was likely to be off task 10% of a typical workday and was likely to be absent from work as a result of her impairments and/or treatment, on average, more than four days per month. *Id.*

On December 16, 2019, Dr. Lukenda completed a four-page, check-the-box, and fill-in-the-blank form entitled, "Treating Source Statement – Physical Conditions." R. 1032–35, Exhibit 22F ("2019 opinion"). Dr. Lukenda indicated that he had begun treating Plaintiff in 2011, and that he had treated Plaintiff for, *inter alia*, CVA, cerebral hemorrhage, and HTN. R. 1032 (reflecting further, *inter alia*, two diagnoses that are illegible). According to Dr. Lukenda, Plaintiff would likely be off task, *i.e.*, Plaintiff's symptoms would likely be severe enough to interfere with the attention and concentration needed to perform even simple work-related tasks, 25% of the time in a typical workday. *Id.* Dr. Lukenda opined that Plaintiff could maintain attention and concentration for less than 30 minutes before requiring a break due to symptoms such as pain or medication side effects. *Id.* He further opined that Plaintiff would, on average, likely be absent from work more than four days per month as a result of her impairments or treatment. *Id.* Dr. Lukenda assessed Plaintiff's ability to perform work-related activities on a regular and continuous basis, using the following scale: "Never," meaning not even once in an eight-hour workday; "Rarely," meaning from 1% to 5% of an eight-hour workday; "Occasionally," meaning from 6% to 33% of an eight-hour workday; "Frequently," meaning from 34% to 66% of an eight-hour workday; and "Continuously," meaning from 67% to 100% of an eight-hour workday. *Id.* Dr. Lukenda opined that Plaintiff could rarely lift and carry ten pounds; could sit for eight hours; but could only stand/walk for less than one hour. R. 1033. To support this assessment, Dr. Lukenda pointed to Plaintiff's "weakness in legs & back[.]" *Id.* Dr.

Lukenda further opined that Plaintiff required an opportunity to lie down or recline throughout

the workday every one to two hours for one hour. *Id*. Dr. Lukenda denied that Plaintiff's legs

needed to be elevated or that she required a cane or other assistive device to ambulate

effectively. *Id*. According to Dr. Lukenda, Plaintiff could occasionally reach overhead and in all

other directions with her arms, and could frequently handle, finger, feel, and push/pull with her

hands. R. 1034. She could frequently use her feet to use foot controls. *Id*. Plaintiff could

occasionally rotate her head and neck, but could only rarely stoop, kneel, and crouch, and she

could never climb stairs and ramps, climb ladders and scaffolds, balance, or crawl. *Id*. She could

rarely tolerate humidity and wetness, dust/odors/fumes/pulmonary irritants, extreme cold,

extreme heat, and vibrations, and should never work around unprotected heights, moving

mechanical parts, or operate a vehicle. *Id*.

On January 27, 2020, Dr. Lukenda issued a third opinion in a check-the-box and fill-in-

the-blank format. R. 1049–51, Exhibit 24F ("2020 opinion").[5] Dr. Lukenda opined that Plaintiff

could continuously lift and carry less than ten pounds but could only rarely lift or carry twenty

pounds. R. 1049. Asked to identify the medical findings that supported this limitation, Dr.

Lukenda responded, "[L]ifting object may raise BP [blood pressure]." *Id*. According to Dr.

Lukenda, Plaintiff could sit for a total of eight hours and could stand/walk for a total of two

hours in an eight-hour workday; she should have the option to sit/stand at will, but she did not

need to elevate her legs when sitting. *Id*. In support of this assessment, Dr. Lukenda explained

that Plaintiff's "cerebral aneurysm can rupture to stress put on body[.]" He further opined that

Plaintiff required an option of lying down or reclining throughout the workday, indicating that

Plaintiff needed to lie down or recline every hour for about ten minutes. *Id*. Dr. Lukenda opined

---

[5] The first page of this opinion is missing.

that, at least sometimes, Plaintiff needed a cane or other assistive device in order to ambulate

effectively. *Id*. According to Dr. Lukenda, Plaintiff could ambulate ten feet without a cane

because of Plaintiff's "gait ataxia [illegible] stroke[.]" R. 1050. Dr. Lukenda noted that Plaintiff

was right-hand dominant and opined that Plaintiff could frequently use her hands/arms for

reaching overhead, reaching all other directions, handling, fingering, feeling, and

pushing/pulling. *Id*. Plaintiff could frequently use her feet to use foot controls. *Id*. Plaintiff could

rarely balance, and could never climb stairs and ramps, climb ladders and scaffolds, stoop, kneel,

crouch, crawl, or rotate head and neck. R. 1051. Dr. Lukenda also opined that Plaintiff could

never be exposed to unprotected heights, moving mechanical parts, dust/odors/fumes/pulmonary

irritants, extreme cold, extreme heat, or vibrations. *Id*.

## V.   DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Lukenda's opinions.

*Plaintiff's Brief*, ECF No. 12, pp. 10–21. This Court agrees.

An ALJ must evaluate all record evidence in making a disability determination. *Plummer,*

186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear and

satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to

perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the

ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and

explain why the ALJ accepted some evidence but rejected other evidence.  *Id*. at 705–06; *Diaz v.*

*Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34,

42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant

treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the

medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical

---

[6] As previously noted, Plaintiff's claim was filed on January 12, 2016. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources").

evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ considers the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c)(1)–(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In this case, at step four of the sequential evaluation process, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except frequent climbing of ramps and stairs, but no climbing of ropes, ladders, or scaffolds; frequent balancing,

stooping, kneeling, crouching, and crawling; and no exposure to hazards such as unprotected heights and moving machinery.

R. 14. In reaching this determination, the ALJ considered Dr. Lukenda's opinions as follows:

> As for the opinion evidence, Dr. Kevin Lukenda, the claimant's primary care doctor, completed *a medical source statement questionnaire on January 4, 2018* in which he opined that the claimant had a good prognosis, but stated that her hypertension and ruptured cerebral aneurysm limits her exertion. He also noted that the claimant had symptoms of depression and she was moderately limited in her ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage herself. He opined that she was only able to maintain attention and concentration for less than one hour, would be off task about 10 percent of the workday, and would be absent from work more than four times per month. (*Exhibit 11F*) [2018 opinion].

> The *medical source statement* form from Dr. Lukenda is given little weight. It focuses on psychological impairments and mental limitations, which are not supported by any medical evidence. There are no diagnoses of mental impairments anywhere in the record, nor corresponding complaints or record of symptoms, and the claimant has had no mental health treatment. In addition, he mostly checked off boxes and circled answers on a form without providing any supporting explanation and the evidence before the date last insured does not support the opinion (*Ex. 22F*) [2019 opinion]. In contrast, the treatment records from the claimant's neurosurgeon indicate normal neurological findings, as discussed above. Similarly, the opinion at *Ex. 24F* [2020 opinion] is not entitled to much weight.

R. 17 (emphasis added).

Plaintiff argues, *inter alia*, that the ALJ did not adequately explain his rejection of the physical limitations contained in Dr. Lukenda's 2019 opinion. *Plaintiff's Brief*, ECF No. 12, pp. 18–20. This Court agrees. Although the ALJ detailed the mental limitations contained in Dr. Lukenda's 2018 opinion, and although the ALJ cited the 2019 opinion, the ALJ failed to acknowledge any of the physical limitations articulated by this treating physician in his 2019 opinion, including, *inter alia*, an ability to rarely lift or carry less than ten pounds, to stand/walk less than one hour, to requiring the option to lie down or recline every one to two hours for one hour throughout an eight-hour workday, and an ability to only occasionally reach overhead and reach in all directions. R. 17. Notably, the ALJ offered no reason for rejecting these opined

physical limitations: After detailing Dr. Lukenda's opined mental limitations in the 2018 opinion, the ALJ explained why he rejected those mental limitations. *Id*. Although the ALJ cites to "Ex. 22F"—*i.e.,* the 2019 opinion—in that explanation, he apparently did so in error as the citation appeared in the context of the ALJ's evaluation of Dr. Lukenda's 2018 opinion. *Id*. Accordingly, the ALJ did not explain why he rejected these physical limitations articulated by Dr. Lukenda in his 2019 opinion, which are not reflected in the RFC determination. R. 14, 1033–35.[7] Although an ALJ is free to determine whether and to what extent a treating physician's opinions should be credited, the ALJ cannot reject a treating physician's opinion "for no reason[.]" *Morales*, 225 F.3d at 317 (cleaned up ); *see also Fargnoli*, 247 F.3d at 43 (stating that when an ALJ "weigh[s] the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.").

Even crediting the ALJ's express rejection of the 2019 opinion, the Court is not persuaded that the ALJ's consideration of that opinion is sufficient for the Court to understand and follow the ALJ's reasoning. For instance, even assuming that the ALJ was addressing the 2019 opinion when he stated that the opinion "mostly checked off boxes and circled answers on a form without providing any supporting explanation and the evidence before the date last insured does not support the opinion (Ex. 22F)," R. 17, the ALJ erred because Dr. Lukenda did

---

[7] Although the 2019 opinion is dated December 16, 2019, *i.e.*, approximately six months after the lapse of Plaintiff's insured status on June 30, 2019, the ALJ did not reject this opinion because it did not relate back to the relevant period. R. 17. Moreover, the ALJ went on to consider Dr. Lukenda's 2020 opinion, finding that it was not "entitled to too much weight[,]" but not rejecting that opinion because it post-dated the lapse of Plaintiff's insured status. *See id.*; *cf. Beety-Monticelli v. Comm'r of Soc. Sec.*, 343 F. App'x 743, 746 (3d Cir. 2009) (finding that the ALJ reasonably found that a doctor's opinion nearly five years after the date last insured "lacked probative value" because it  "shed no light" on the claimant's condition during the relevant period); *Newell v. Comm'r of Soc. Sec. Admin.*, 347 F.3d 541, 547 (3d Cir. 2003) (permitting consideration of medical evidence beginning seven months after the claimant's date last insured).

in fact explain that "weakness in legs & back" supported his limitations regarding Plaintiff's ability to only rarely lift or carry less than ten pounds and stand/walk for no more than one hour. R. 1033. And although the ALJ also stated that "treatment records," and "evidence before the date last insured" did not support the 2019 opinion, the evidence actually discussed by the ALJ related primarily to the period 2014 through 2016 (with some evidence from January 2017). R. 15–17. Notably, medical records from November 2018 reflect that Plaintiff had experienced two or more falls in the prior year. R. 978.

In short, the ALJ's decision either overlooked Dr. Lukenda's 2019 opinion or gave that opinion inadequate consideration. R. 17. The ALJ's decision simply does not allow this Court to understand and assess the basis for the ALJ's discounting of the physical limitations in Dr. Lukenda's 2019 opinion. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"); *cf. Hines v. Colvin*, No. CV 18-13828, 2018 WL 6313499, at *4 (D.N.J. Dec. 3, 2018) ("These vague citations to the record are insufficient to 'provide a clear and satisfactory explication" of the weight given to Dr. Allegra's opinion in order to assist a reviewing court in "perform[ing] its statutory function of judicial review.'") (quoting *Cotter*, 642 F.2d at 704−05). Based on this record, the ALJ has not explained his evaluation of the evidence and reasons for discounting Dr. Lukenda's 2019 opinion in a manner that would permit this Court to meaningfully review whether the ALJ's reasoning accords with the regulation's standards. *See Samah v. Comm'r of Soc. Sec.*, No. CV 17-08592, 2018 WL 6178862, at *5 (D.N.J. Nov. 27, 2018) ("[A]n ALJ need only 'explain his [or her] evaluation of the medical evidence for the district court to meaningfully review whether his [or her] reasoning accords with the regulation's standards.'")

(quoting *Laverde v. Colvin*, No. 14-cv-1242, 2015 WL 5559984, at *6 n.3 (W.D. Pa. Sept. 21, 2015)).

Nor can the Court conclude that the ALJ's error in this regard is harmless. Dr. Lukenda's opined physical functional limitations—that Plaintiff can, *inter alia*, only rarely lift or carry less than ten pounds; stand/walk less than one hour per day; and must lie down or recline from one hour every hour or two—are apparently inconsistent with the RFC for light work. R. 14; *see also* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."); SSR 83-10 ("Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."); *Fargnoli*, 247 F.3d at 40 (remanding where, *inter alia*, the ALJ failed to explain his assessment of treating opinions "that contradict the ALJ's finding that [the claimant] can perform light work").

Finally, the Court rejects the Acting Commissioner's suggestion that other evidence in the record supports the ALJ's apparent rejection of Dr. Lukenda's 2019 opinion. The ALJ did not rely on this rationale in evaluating Dr. Patel's opinions. R. 17. The Acting Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171

F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district

court should not substitute its own independent analysis for reasoning not mentioned by the ALJ)

(citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6

(D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the

rationale contained in that decision; the Court is not to consider hypothetical rationales, which

may justify the ALJ's decision, but which were not in fact underlying the opinion in question.")

(citation omitted).

This Court therefore concludes that remand of the matter for further consideration of

these issues is appropriate.[8] Moreover, remand is appropriate even if, upon further examination

of Dr. Lukenda's 2019 opinion and the RFC determination, the ALJ again concludes that

Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-

1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the

same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*,

No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did

not provide an adequate explanation that would enable meaningful review, and the Court once

more cannot determine what role lay speculation played in the ALJ's rejection of this detailed

functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734,

at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or

misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not

absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

---

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes
that the matter must be remanded for further consideration of Dr. Lukenda's 2019 opinion and
the RFC determination, the Court does not consider those claims.
.

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.     CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this Opinion and Order.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  April 27, 2023                              *s/Norah McCann King*
                                          NORAH McCANN KING
                                          UNITED STATES MAGISTRATE JUDGE